GRAUL, APPELLANT, *v.* STATE PERSONNEL BD. OF REVIEW, DEPT.
OF STATE PERSONNEL, APPELLEE.
JONES, APPELLANT, *v.* STATE PERSONNEL BD. OF REVIEW, DEPT.
OF STATE PERSONNEL, APPELLEE.
RACLE, APPELLANT, *v.* STATE PERSONNEL BD. OF REVIEW, DEPT.
OF STATE PERSONNEL, APPELLEE.
CONLEY, APPELLANT, *v.* STATE PERSONNEL BD. OF REVIEW, DEPT.
OF STATE PERSONNEL, APPELLEE.
SHOOK, APPELLANT, *v.* STATE PERSONNEL BD. OF REVIEW, DEPT.
OF STATE PERSONNEL, APPELLEE.
BARRETT, APPELLANT, *v.* STATE PERSONNEL BD. OF REVIEW, DEPT.
OF STATE PERSONNEL, APPELLEE.
LENEAR, APPELLANT, *v.* STATE PERSONNEL BD. OF REVIEW, DEPT.
OF STATE PERSONNEL, APPELLEE.

(Nos. 6800, 6801, 6802, 6803, 6804, 6805 and 6806—
Decided June 5, 1962.)

*Mr. John M. Tobin,* for appellants.

*Mr. Mark McElroy,* attorney general, and *Mr. Walter M. Shea,* for appellee.

*Per Curiam.* After the Department of State Personnel came into existence, the employees of the Attorney General's office were classified by the new agency, and some of the employees thought they were improperly classified and appealed their classifications to the State Personnel Board of Review. When the decision of the State Personnel Board of Review was not favorable to their contention, eight employees appealed to the Court of Common Pleas of Franklin County, Ohio, under the provisions of Section 119.12, Revised Code, and that court, upon review of the record, decided the order of the State Personnel Board of Review was supported by reliable, probative and substantial evidence and was in accordance with law.

Seven out of the eight employees have appealed their cases to this court, and the State Personnel Department contends that these appeals should be dismissed on jurisdictional grounds. Although the jurisdictional question was not raised in the Common Pleas Court, it (the department) now contends that Section 143.012 of the Revised Code makes the decision of the State Personnel Board of Review final, and that the courts have no power to entertain an appeal in classification cases from the State Personnel Board of Review.

In *State, ex rel. Oliver,* v. *State Civil Service Commission of Ohio* (1959), 168 Ohio St., 445, the Supreme Court held that the provisions of Chapter 119 of the Revised Code prevailed over the provisions of Section 143.27 of the Revised Code. The court noted that the Civil Service Commission was an agency within the purview of Section 119.01, Revised Code, that the second paragraph of Section 119.12 of the Revised Code applied to ''other adjudication'' orders, and that Chapter 119 was a later enactment. While the decision does not mention the fact, Section 143.27, Revised Code, had been amended and re-adopted after the enactment of Chapter 119. See 126 Ohio Laws (1955), 90. However, the 1955 amendment did not affect the final-order provision. If one applies the rule that substantial re-enactment of a statute does not generally disturb a prior

interpretation, it might be assumed that the court did not consider the 1955 amendment as having any significant effect on the appealability of an order. See 50 Ohio Jurisprudence (2d), 297 *et seq.,* Statutes, Sections 314-316.

In 1959, Section 143.27, Revised Code, was amended. See 128 Ohio Laws, 1049, 1064. The amendment did not affect the final-order provision. The Legislature also created a new Board of Review. Among the newly enacted statutes is Section 143.012, Revised Code. This section expressly provides that the orders of the Board of Review are final. It would seem reasonable to interpret this as a specific statute which operated to overrule the *Oliver case.* However, such an interpretation would conflict with another new statute, Section 143.011, Revised Code. The second paragraph of that section requires that the provisions "in any law of this state" applying to the former Civil Service Commission shall be construed as applying to the Board of Review. By substituting the board for the commission in Section 119.01, Revised Code, and applying the second paragraph of Section 119.12, Revised Code, the effect is to create the right of appeal. Sections 143.011 and 143.012, Revised Code, were adopted at the same time, should be construed together, and, if possible, reconciled. The most reasonable interpretation of the various conflicting provisions is, in our opinion, to interpret Section 143.012, Revised Code, as making the board's order "final" in the sense of being the highest or ultimate authority within the agency, but not in the sense of a specific denial of the right to appeal. Accordingly, under the provisions of Section 143.011, Revised Code, and Chapter 119, Revised Code, we hold the board's orders to be appealable. Attention is directed to the 1961 amendment of Section 143.27, Revised Code (in 129 Ohio Laws, 1330, 1332).

The motion to dismiss in each case is overruled. The cases will be retained for a decision on the merits of the respective cases.

*Motions overruled.*

Duffey, P. J., Duffy and Bryant, JJ., concur.

(Decided June 5, 1962.)

ON the Merits.

BRYANT, J. Marjorie A. Graul, Alice F. Jones, Leota M. Racle, Phyllis J. Conley, Olga Shook, Marian R. Barrett and Alma Lenear have appealed to this court from separate judgments and orders of the Court of Common Pleas of Franklin County which, in each of the cases, affirmed the order made by the State Personnel Board of Review rejecting separate appeals of each of the seven appellants named herein.

All the appellants are under permanent civil service appointment and classification and all are employed in the office of the Attorney General of Ohio. For the most part they are career employees, the seven having served in the aggregate more than ninety-one years, or an average of thirteen years each.

Examination of a photograph copy of "Position Description," a two-page document in the file of each of the seven appellants, sets forth a detailed description of the state positions held during the ten-year period prior to April 10, 1958.

It appears that in each case, the appellant was the holder of a classified civil service position as of December 31, 1959, and that on January 1, 1960, in all but two cases, the salary for the position was substantially increased, while at the same time the civil service classification of each appellant was changed. The effect of this, in the five cases, was to keep them from getting this increase.

In case No. 6800, Marjorie A. Graul, appellant—referring to a form attached to the file marked BR1, it appears that on December 31, 1959, this appellant was classified as Clerk V, Step 5, and was then entitled to receive $400 monthly. It also appears that, effective January 1, 1960, an amendment to the law became effective by which the salary of Clerk V, Step 5, was increased to $480 per month. Also effective January 1, 1960, this appellant was reclassified as Clerk IV, Step 5, with a salary of $400 per month.

In case No. 6801, Alice F. Jones, appellant—referring to a form attached to the file marked BR1, it appears that on De-

cember 31, 1959, this appellant was classified as Clerk-Stenographer IV, Step 5, and entitled to receive $360 monthly. Effective January 1, 1960 (128 Ohio Laws, 892), the position of Clerk-Stenographer IV was abolished, Clerk-Stenographer III being the highest remaining category in this class with a maximum salary of $360. This appellant was, on January 1, 1960, reclassified as Clerk-Typist III, Step 6, at a salary of $360 monthly.

In case No. 6802, Leota M. Racle, appellant—referring to a form attached to the file marked BR1, it appears that on December 31, 1959, this appellant was classified as Clerk V, Step 5, and was entitled to receive $400 monthly. As above stated, effective January 1, 1960, the salary of Clerk V, Step 5, was increased to $480 per month. Also effective on January 1, 1960, this appellant was reclassified as Clerk IV, Step 5, at a salary of $400 monthly.

In case No. 6803, Phyllis J. Conley, appellant—referring to form marked BR1, it appears that on December 31, 1959, this appellant was classified as Clerk-Typist III, Step 3, at a salary of $276 per month. Effective January 1, 1960, the salary of Clerk-Typist III, Step 3, was increased to $315 per month. Also effective on January 1, 1960, this appellant was reclassified as Clerk-Typist II, Step 3, with a salary of $276 per month.

In case No. 6804, Olga Shook, appellant—referring to form attached to the file marked BR1, it appears that on December 31, 1959, this appellant was classified as Clerk IV, Step 5, and entitled to receive $345 per month. Effective January 1, 1960, the salary of Clerk IV, Step 5, was increased to $400 per month. Also effective on January 1, 1960, this appellant was reclassified as Clerk III, Step 5, at a salary of $345 monthly.

In case No. 6805, Marian R. Barrett, appellant—referring to a form attached to the file marked BR1, it appears that on December 31, 1959, this appellant was classified as Clerk-Stenographer IV, Step 5, and entitled to receive $360 monthly. Effective January 1, 1960, the position of Clerk-Stenographer IV was abolished, Clerk-Stenographer III being the highest remaining category in this class with a maximum salary of $360 monthly. Also effective January 1, 1960, this appellant was reclassified as Clerk-Typist III, Step 6, at a salary of $360 per month.

In case No. 6806, Alma Lenear, appellant—referring to a form attached to the file marked BR1, it appears that on De-

cember 31, 1959, this appellant was classified as Clerk V, Step 5, and entitled to receive $400 monthly. Effective January 1, 1960, the salary of Clerk V, Step 5, was increased to $480 monthly. Also effective January 1, 1960, this appellant was reclassified as Legal Stenographer, Step 5, with a salary of $400 monthly.

The present classification plan now in effect with numerous modifications was first enacted in 1949 by the 98th General Assembly, Amended Substitute House Bill No. 382 (123 Ohio Laws, 862) being enacted as an emergency measure effective July 28, 1949, with the changes in salary and related matters to become effective January 1, 1950.

From the language of the 1949 Act, above referred to, on pages 938 and 939 of 123 Ohio Laws, we learn that the purposes of this far-reaching legislation were three-fold, namely, standardization of the various positions, enactment of increased compensation, and to permit the state of Ohio to keep competent employees. These purposes appear to be clearly within the letter and spirit of Section 10, Article XV, Constitution of Ohio, by which a strong civil service became the established policy of Ohio, this section reading as follows:

"Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision."

Numerous amendments have been made in the basic law since its enactment in 1949. So far as the pay range classifications are concerned, as set forth in Section 143.10 (A), Revised Code, for the period from October 1, 1955, to and including December 31, 1959, reference must be made to 126 Ohio Laws, 949. While for the period beginning January 1, 1960, to and including the present time, reference must be made to 128 Ohio Laws, 892, at page 913.

Also of importance here are the provisions of Amended House Bill No. 794 enacted by the 103rd General Assembly in 128 Ohio Laws, 1049, effective November 2, 1959, creating the Department of State Personnel, consisting of a Director of State Personnel and a State Personnel Board of Review.

It will be seen, therefore, that the answer to some of the

questions here before the court requires a reference to legislation effective during 1959 but enacted prior thereto. As has been pointed out, Amended Substitute House Bill No. 591 (128 Ohio Laws, 892) did not become effective by its terms until January 1, 1960, and Amended House Bill No. 794 (128 Ohio Laws, 1049) did not become effective until November 2, 1959.

As has been heretofore pointed out, it would appear that in every case here involved, all the steps required to be taken must have been taken prior to January 1, 1960, the latter being the date when the reclassifications were effective. It, therefore, follows that we must examine the provisions of Section 143.09 (B) *et seq.* as they existed prior to January 1, 1960, the effective date of Amended Substitute House Bill No. 591.

It appears that at the time all the reclassifications, above referred to, were made, Section 143.09, Revised Code, as amended in Amended Substitute House Bill No. 125 (127 Ohio Laws, 488) was in effect, Amended Substitute House Bill No. 125, just referred to, became effective September 13, 1957, and Section 143.09, Revised Code, *supra,* as thus amended, remained in full force and effect until January 1, 1960. Included in such section was 143.09 (E) reading as follows (see 127 Ohio Laws, 512):

"(E) Where the commission proposes to reclassify any employee, said commission shall give to the employee affected, and to his appointing authority, a notice in writing setting forth the proposed new classification, pay range and salary. An employee or appointing authority desiring a hearing shall file a written request therefor with the commission within ten days after receiving said written notification; whereupon the commission shall set the matter for a hearing and notify said employee and the appointing authority of the time and place of said hearing. * * *"

The same basic rights, somewhat expanded, are also provided for in an amendment effective January 1, 1960. See Section 143.09(F), Revised Code (128 Ohio Laws, 892, 911). In the remaining language of the above subsection, authority is granted to the affected employee to submit facts to the commission, while in subsequent sections, provisions are made for the filing of job descriptions with the Secretary of State, and other procedural steps are authorized.

As heretofore indicated, effective November 2, 1959, Amend-

ed House Bill No. 794, *supra* (128 Ohio Laws, 1049), became effective, substituting a Director of State Personnel and a State Personnel Board of Review for the former Civil Service Commission. Section 143.011, Revised Code, as therein enacted, contains the following provision:

"Whenever in any law of this state, in effect at, or after the time the State Civil Service Commission and the offices of commissioners or members of said commission shall, by the provisions of this act, be abolished, the term 'State Civil Service Commission,' 'commission,' 'commissioner' or 'member' meaning the State Civil Service Commission or the offices of commissioners or members of said commission, which by this act shall have been abolished, is used, such terms shall be construed as referring to the Department of State Personnel, the Director of State Personnel, the State Personnel Board of Review or the members of said State Personnel Board of Review, as the provisions of this act may require."

Section 119.01, Revised Code, setting forth definitions under the Administrative Procedure Act, reads in part as follows:

"As used in Sections 119.01 to 119.13, inclusive, of the Revised Code:

"(A) 'Agency' means, except as limited by this division, any official, board, or commission having authority to promulgate rules or make adjudications in the Bureau of Unemployment Compensation, the Civil Service Commission, the Department of Industrial Relations, * * *."

In the case of *State, ex rel. Oliver,* v. *State Civil Service Commission* (1959), 168 Ohio St., 445, it was held that the provisions of the Administrative Procedure Act (Chapter 119, Revised Code) are applicable to cases heard by the State Civil Service Commission, the court stating at page 447:

"* * * The Administrative Procedure Act, Chapter 119, Revised Code, providing for appeal from an order of an agency to the Court of Common Pleas was enacted subsequent to the Civil Service Act and would govern if there were an inconsistency."

In that case it was contended that because the provision of Section 143.27, Revised Code, made the decision of the commission final, no appeal could be made to a court. From what has been set forth above, it would appear that the rule of law in

the *Oliver case, supra* (168 Ohio St., 445), is still effective and that the proceedings before the State Personnel Board of Review and, on appeal, from the board, are governed by the Administrative Procedure Act. This court has so held in a decision in these cases on June 5, 1962 (see page 108).

If that be the case, and we believe it is, we are unable to agree with the conclusion reached by the court below that the orders appealed from were supported by reliable, probative and substantial evidence. Neither time nor space will permit a detailed examination of all the steps taken in all the cases.

The case of Alma Lenear, appellant in case No. 6806, will serve as an illustration. She is a twenty-five year employee of the state. Apparently, according to question No. 29, "Position Description," from 1950 to 1957, she served as Clerk-Stenographer IV, while from February 15, 1957, to and including December 31, 1959, she served as Clerk V. Effective January 1, 1960, she was reclassified as follows:

| No. | Title | Step | Salary | P.R. |
|---|---|---|---|---|
| "1024 | Legal Stenographer | 5 | $400 | 24" |

We have already pointed out that during all of 1959, the law (Section 143.09[E], Revised Code) gave the employee a right to notice and an opportunity to be heard. The record is silent in this respect, and it seems that this change was taken without regard to the statute. The classification change, even if legally made, was a mistake, and the State Personnel Board of Review, hereinafter called the board, so found. Mrs. Lenear's duties do not involve taking dictation, and in no sense was it proper to classify her as a legal stenographer.

At no time during 1959 was there any such classification in the law as "legal stenographer." The amendment to Section 143.09(A), Revised Code (128 Ohio Laws, 892), creating that classification did not go into effect until January 1, 1960.

The record in every one of these cases leaves much to be desired if, in fact, they are entitled even to be called records. What we find in the files in each case is a collection of papers, mostly photo copies, a few totally or partially illegible.

It was the duty of the Department of State Personnel under Section 119.12, Revised Code, to *"prepare and certify to the court a complete record of the proceedings in the case."* (Emphasis added.)

It was the duty of the agency to furnish not only the evidence at any hearing but also a copy of the complete record, Section 119.12, *supra,* further requiring the agency to furnish *"a copy of the stenographic report of testimony offered and evidence submitted at any hearing and a copy of the complete record."*

In the Lenear case, and all of the others, we observe:

(1) The so-called complete record fails utterly to include the preliminary notice of the change from the December 31, 1959, to the January 1, 1960, classification.

(2) The so-called stenographic report of testimony is completely and totally lacking of any certificate showing that it is all of the testimony and evidence or that it is even correct or complete.

(3) While the separate files each contain a variety of papers, nowhere is there any statement, certificate or even a claim that these papers are "the complete record" or for that matter any statement as to what they are.

(4) Nearly all these various papers are merely photographs of some other document, many lack any date, identification or label which would even suggest who prepared them.

(5) Some of these photo-copies reproduced only part of the document, such as the printed words, but little or none of that which was written.

The records fail to disclose who made any of the changes in classification, when they were made, what preliminary steps, if any, were taken or what notice, if any, was given.

From some of the files, it appears that the only notice received by the employee was from the employer even though the change would appear to have been made by the commission or the director of state personnel.

It is clear that in each and every case, the State Personnel Board of Review held against the employee and in favor of whoever made the change, either the commission or the director. The court below held:

"It is my judicial conclusion under Section 119.12, Revised Code of Ohio, that there was, in these records, 'reliable, probative and substantial evidence' to support the orders on rehearing of the State Personnel Board of Review, and that such orders were, and are, 'in accordance with law.' Under Section

119.12, Revised Code of Ohio (one paragraph of which is quoted above), it becomes my clear duty to affirm."

With that we find ourselves unable to agree, primarily for the reason that, if the commission or the director had any evidence, it never got into the record. In each of these cases, the employee asked for and was granted a hearing. The director had an equal opportunity to offer contrary evidence. He did not do so and, so far as the record is concerned, said nothing and offered no evidence to the contrary.

We conclude that the only evidence or testimony was in support of the employee and, as a result, the order of the board is not supported by evidence which is either reliable or unreliable, substantial or unsubstantial, probative or otherwise. There simply is a complete and total lack of any evidence of any kind which supports these orders.

An examination of these files with care will disclose other defects. It appears from the opinion of the court below that counsel for the appellee conceded there was no ground for opposing the claims of the appellants in four cases—No. 6800, Marjorie A. Graul, No. 6802, Leota M. Racle, No. 6803, Phyllis J. Conley, and No. 6804, Olga Shook.

In every case, the judgment of the court below and the State Personnel Board of Review must be reversed, and the causes remanded to the Director of State Personnel. It is his clear duty to take steps to restore all the appellants, excepting in cases No. 6801 and No. 6805, to the classifications they held on December 31, 1959, and allow them the subsequent increases provided by law. In case No. 6801 and case No. 6805, he shall restore the appellants to the highest remaining number in the classification they held, giving effect to the requirement that they suffer no reduction in salary.

*Judgments accordingly.*

DUFFEY, P. J., and DUFFY, J., concur.

(Decided July 17, 1962.)

ON MOTIONS for Reconsideration.

BRYANT, J. The State Personnel Board of Review has moved for a reconsideration of the decisions by this court of

June 5, 1962, in cases numbers 6800 to and including 6806 (see page 111). These were appeals by Marjorie A. Graul, Alice F. Jones, Leota M. Racle, Phyllis J. Conley, Olga Shook, Marian R. Barrett and Alma Lenear, and in each case the board was the appellee.

On June 7th the board furnished each member of the court with a volume entitled ''Classification and Compensation of Positions in the Service of the State of Ohio,'' Staff Research Report No. 39, Ohio Legislative Service Commission, published February, 1959. This is no part of the record and, unless we have authority to take judicial notice of it, may not be considered in deciding this case.

Upon re-examination of each of the cases, the briefs and arguments of counsel and the latest briefs filed by counsel for the board, we find no reason to alter the conclusions announced in our June 5, 1962, decisions.

It is not in dispute that all the changes in classification challenged here allegedly became effective on January 1, 1960, as a result of acts, determinations and papers prepared by James T. Welsh, as Director of the Department of State Personnel, allegedly pursuant to law, pursuant to which he filed papers necessary to make the changes with the Secretary of State sometime prior to January 1, 1960.

If it becomes necessary for us to enter the field of judicial notice in this case in order to consider the two hundred page report which is no part of the record in this case, we might also judicially notice:

(1) That the so-called ''revised specifications'' for positions in the state service, pursuant to the 1959 amendment of Section 143.09, Revised Code (128 Ohio Laws, 892), pursuant to the provisions of the previous Section 143.09 (F), *supra*, were prepared and filed by the new Director of State Personnel accompanied by a letter of transmittal on stationery of the new department, being filed at or before twelve noon on December 30, 1959, although the letter bore the typed date of January 1, 1960.

(2) That the former State Civil Service Commission was not abolished, the offices of Director of State Personnel and State Personnel Board of Review were not empowered to perform any acts and the powers of the former State Civil Service

Commission did not pass to the new department, its director and board until three things took place, under the provisions of Section 143.011, Revised Code (as enacted in Amended House Bill No. 794 in 128 Ohio Laws, 1049), to wit, (1) the members of the board of three persons and the Director of State Personnel were appointed by the Governor; (2) each of the four took the oath of office and signed it; and (3) each of the four filed a bond for $10,000 in the office of the Secretary of State, pursuant to Sections 143.02 and 143.021, Revised Code.

(3) In the case of the three board members, Section 143.02, *supra* (128 Ohio Laws, 1052), requires the compliance with the bond provision as provided in Section 121.11, Revised Code, "*before* entering upon the duties of his office" (emphasis added), and in case of the Director of State Personnel, Section 143.021, *supra* (128 Ohio Laws, 1052), requires similar compliance as provided in Section 121.11, Revised Code, "before entering upon the duties of his office."

(4) Under the provisions of Section 121.11, *supra,* it is required that "such bond and oath shall be filed in the office of the Secretary of State."

(5) That although the new job descriptions in each case now before the court were prepared by the Director of State Personnel and filed by him with the Secretary of State at or before twelve noon on December 30, 1959, at that time neither the director nor anyone of the three board members had filed either the oath of office or the required bond with the Secretary of State.

(6) As a result, at or before noon on December 30, 1959, when the new job classifications were prepared and filed, there was no Department of State Personnel, there was neither a director nor a board and none of the powers of the State Civil Service Commission had been transferred to it.

(7) That on December 31, 1959, the required oath and bond of Paul Benson and Carl W. Smith were filed with the Secretary of State, and on January 4, 1960, the required oath and bond of the other board member, Minor W. Kerschner, and the Director of the Department of State Personnel, James T. Welsh, were filed with the Secretary of State.

Suffice it to say, the many errors and deficiencies pointed out in our opinion of June 5, 1962, in the earlier steps taken, are

material, prejudicial, and make necessary the reaffirmance of our opinions and decisions of June 5, 1962 (see page 111), and the two motions of the board for reconsideration and for oral argument must be, and hereby are, overruled.

*Motions overruled.*

DUFFEY, P. J., and DUFFY, J., concur.